## Commonwealth v. Laterza

*Roberts R. Appel* and *Bernard M. Zimmermann,* for petitioner.

*Paul A. Mueller,* district attorney, for Commonwealth, contra.

ATLEE, P. J., October 18, 1933.—Stephen Laterza was convicted of the offense of involuntary manslaughter, which occurred when the defendant was driving on a highway in this county. As alleged by the Commonwealth and established by the verdict of the jury, the defendant forced another car from the roadbed and thereby caused the death of an occupant of the car.

The verdict of the jury was guilty, with a recommendation to the mercy of the court. On June 17, 1933, the defendant was sentenced to 9 months in the county prison, to date from May 13, 1933, the date of the incarceration of the defendant. On October 13, 1933, the defendant was brought before the court on a petition for parole. The parole was asked on the ground that the defendant, previous to his conviction, had borne a good reputation and that the defendant's family was in dire need. Employment was promised at a wage sufficient to maintain the defendant and his family, and every circumstance which might move the court to leniency was clearly established by the credible testimony of people of responsibility. Unquestionably, this is a most unfortunate case, and the defendant and his family undoubtedly are suffering grievously as the result of the defendant's misfortune. The maximum punishment for involuntary manslaughter is a fine not exceeding $1,000 and imprisonment not exceeding 3 years. In the instant case, the verdict recommended the defendant to the mercy of the court. A sentence of 9 months to date back a month and 4 days prior to the date of the imposition of the sentence certainly seems to be granting mercy, as recommended by the jury.

Upon careful consideration of the instant case, the court is convinced that the parole should be refused. Part of the reason for imposing sentence upon those convicted of crime is to deter others from like offenses. Too great emphasis cannot be laid upon the need for safety upon our congested highways. The immediate application for parole in part was based upon the argument that a man sentenced to 1 year in jail would be entitled to 2 months' commutation, to be deducted from his sentence under the provisions of the Act of May 11, 1901, P. L. 166, sec. 1. In sentencing the instant defendant, the court took into consideration the date of his original incarceration on May 13, 1933, so that the defendant received practically a sentence to 8 months in jail. The power to grant paroles to prisoners convicted and sentenced to our local county prison is found in the provisions of the following acts: Act of June 19, 1911, P. L. 1055, sec. 1; Act of June 19, 1911, P. L. 1059, sec. 1; Act of May 5, 1921, P. L. 379, sec. 1; Act of May 11, 1923, P. L. 204, sec. 1: see 61 PS § 314. Judicial consideration of the parole act has resulted in the following pronouncements: "The action of the court in passing upon a petition for parole is the exercise of a

judicial discretion. It is important that this discretion be exercised at all times fairly and without abuse, but it must be remembered that mere symp'athy for an offender is not a sufficient foundation to call for the affirmative exercise of this discretionary power. In Com. v. Donovan, 6 D. & C. 333, Smith, P. J., exercised discretionary power vested in the court affirmatively, and cited with approval what Edwards, P. J, of Lackawanna County, stated [Com. v. Ferarro, 21 Dist. R. 909] (12 Lacka. Jurist, 291, 292) was the main consideration in disposing of applications for parole, namely, the accomplishment of the reformation of the individual. And Reno, P. J., in Com. v. Kimmel, 6 D. & C. 637, laid down this general rule: 'Paroles are grantable only when the court is convinced that the character of the prisoner and the circumstances of the case are such that he is not likely to engage again in an offensive course of conduct and that the public good does not require that he should suffer the penalty imposed by law: Act of June 19, 1911, § 1, P. L. 1055. Unless the petition and the public hearing reveals conclusive evidence of these factors, there will be no parole.' He also well supported this rule when he said: 'The parole system, at best, is a grafting upon our jurisprudence and is so potential with inherent capacity for grave abuse that we shall not extend its operation beyond the plain letter of the act. . . .' " Commonwealth v. Eisenhauer, 8 D. & C. 269, 271.

In a case where after-discovered evidence is found too late to be used upon application for a rule for a new trial, such evidence may be considered at the hearing for parole: Commonwealth v. Ferraro, 21 Dist. R. 909, 910. It will be observed by reading of the first citation above set forth that one of the conditions upon which discharge on parole must be predicated is that the public good does not require that the defendant suffer the penalty imposed by law: Act of June 19, 1911, P. L. 1055, sec. 1. The Act of June 19, 1911, P. L. 1059, does not include in the language of the act these words as to what the public good does or does not require. The court feels bound to take into consideration in this case and in all other cases the requirements of the public good.

After careful consideration of the instant application, the court is of the opinion that great mercy was shown the defendant when he was sentenced to 9 months in jail, to date from the date of the incarceration, and feels that the public good requires that the defendant should suffer the penalty imposed by his sentence.

The petition for parole is refused.

From George Ross Eshleman, Lancaster, Pa.